(50 South. 467.)

No. 17,489.

NEW ORLEANS, FT. J. & G. I. R. CO. v. NEW ORLEANS SOUTHERN RY. CO.

(March 29, 1909. On the Merits June 7, 1909. Rehearing Denied Oct. 18, 1909.)

1. RETURN DAY OF APPEAL.

The appeal was made returnable within 10 days from the date of the order of appeal as required by Act No. 159, p. 312, approved July 14, 1898.

2. APPEAL AND ERROR (§ 344*)—ACTION—APPEAL—TIME FOR TAKING.

The judgment was signed appointing the receiver. The judgment making such an appointment should be signed, and, in consequence, the time for taking the appeal is not counted from the day that the judge a quo orally announces his appointment in open court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1889–1893, 1896; Dec. Dig. § 344.*]

3. OTHER ISSUES.

There were other grounds urged, not connected with the application for the appointment of a receiver.

As to these, the appellant has in any event the right to be heard.

The demand for the appointment of a receiver does not preclude the applicant for the appointment from urging other grounds.

4. APPEAL AND ERROR (§ 364*)—RETURN DAY FOR APPEAL—FIXING BY COURT—MISTAKE.

In any event, the date of the return day of the appeal was fixed by the judge of the district court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 364.*]

5. RAILROADS (§ 131*) — LEASES — PARALLEL AND COMPETING ROADS.

The object of the present suit is to have a lease which was entered into between the plaintiff company and the defendant annulled, avoided, and set aside on the ground that it was ultra vires of both companies, and was in contravention of the provisions of Act No. 74, p. 101, of 1902, on the ground that the two railroads "were parallel and competing roads." The district court rejected the demand of the plaintiff, and for reasons assigned that judgment is affirmed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 404; Dec. Dig. § 131.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by the New Orleans, Ft. Jackson & Grand Isle Railroad Company against the New Orleans Southern Railway Company. Judgment for defendant, and plaintiff appeals, and defendant moves to dismiss the appeal. Motion overruled. Judgment affirmed.

Farrar, Jonas, Kruttschnitt & Goldberg, for appellant. E. Howard McCaleb (John Thos. Smith, of counsel), for appellee. Gustave Lemle, for intervener.

On Motion to Dismiss Appeal.

BREAUX, C. J. The grounds are that the appeal having been taken from an order refusing to appoint a receiver and refusing to grant an injunction, and the appeal not having been perfected in time, it should be dismissed.

Going into details, the contention is that the appeal was not made returnable to this court within 10 days from the date of the order of appeal as required by Act No. 159, p. 312, approved July 14, 1898.

Plaintiff's petition, which we have had to refer to on this motion to dismiss, substantially states that the lease described in the petition is null and void.

In consequence plaintiff asks that it be recognized as entitled to possession of the property and to recover of the defendant all the rents and revenues thereon from the date of the lease, that it be given an accounting, and that it be decreed the owner of the funds arising from the rents and revenues of the property now in the New Orleans National Bank or elsewhere deposited.

Plaintiff further prayed for a writ of injunction restraining defendant from using any of the incomes and profits from daily receipts or any of the funds for any other purpose.

Plaintiff asked for an order directing defendant to show cause why a receiver should not be appointed to take charge of the property and administer it. And in the event

the court should hold a writ of sequestration, and not the appointment of a receiver, the remedy, petitioner asked on its giving bond in a sum fixed by the court for a writ of sequestration of all the property.

The petitioner further asked that it be adjudged that the receiver is designated as a judicial sequester appointed by the court.

A writ of injunction was issued, and an order nisi to the defendant to show cause why a receiver should not be appointed.

The defendant appeared and filed an exception and an answer asking that plaintiff's demand be rejected, and also that the writ of injunction be dissolved.

Judgment was rendered in favor of defendant discharging the rule for the appointment of a receiver, dissolving the injunction, and rejecting the demand and dismissing the suit, discontinuing the intervention, and decreeing that the reconventional demand against defendant be dismissed as in case of nonsuit, and reserving defendant's right to sue for damages.

The judgment was rendered in open court on January 19, 1909. It was signed on January 26, 1909.

The motion of appeal was made on January 29th, and the bond was filed on February 5th.

On the 29th day of January plaintiff obtained a suspensive appeal to this court.

The contention is that the suit was instituted and prosecuted under Act No. 159, p. 312, approved July 14, 1898, entitled "An act to authorize and regulate the appointment of receivers for corporations under Art. 109 and Art. 233 of the Constitution."

The contention on the part of the defendant on this motion to dismiss the appeal is that the purpose was not to obtain the appointment of a receiver to take possession of and manage the property; that it was an appeal to the general equity powers of the court beyond the limits of the statute cited; and

that, if the court should conclude that its powers should not extend to the appointment of a receiver, then asking that a writ of sequestration should issue.

We do not conceive that it is necessary to dwell upon this point, for it is next stated that the application to appoint a receiver in this case was abandoned on the trial of the merits because it appeared that in the interval between the application for the appointment of a receiver and the hearing on the merits defendant paid the January interest on plaintiff's claim.

In the brief of defendant in motion, we are informed that counsel stated in open court that, this having been done, the application for the appointment of a receiver was abandoned as the application had accomplished its purpose.

This really leaves no contest in so far as relates to the receivership. It is disposed of entirely. The dispute is limited to the question of the validity of the lease in question, and, if the lease is invalid, whether plaintiff is entitled to the conservative remedy of an injunction to prevent the defendant from spending the revenues of its property except for any other purposes than those pertaining to the management of the property itself and the payment of the bonded debts.

In order to decide the different points presented, we have taken up the question whether the appeal was taken in time under the act of 1898.

We have seen that the judgment was signed on January, the 26th. The motion for an appeal was made three days after, and the bond was filed as before stated within 10 days from the date judgment was signed.

Prior to that time there had been a judgment rendered, but not signed.

A judgment appointing a receiver should be signed, and, if it should not be signed,

the motion for the appeal lies only after the judge has affixed his signature.

From that point of view the appeal was in time.

We will state, in addition, that it does not appear that the appeal was made returnable, as it was, at the instance of appellant. It appears of record as the order of the judge fixing the return day without suggestion from the appellant in that regard.

This court has passed recently upon that point, and decided that in matter of date we could not hold that the appellant was responsible if an oversight be committed unless it appeared that it was the act of the appellant.

There is nothing of the kind here. The court acted directly in fixing the return day.

We do not think the appeal should be dismissed.

For reasons assigned, the motion to dismiss is overruled.

### On the Merits.

NICHOLLS, J. The plaintiff corporation appearing through its president, Charles D. Haines, in the petition herein filed, alleged: That, as appears by its charter, the main object and purpose of the corporation was:

"To construct, own, and operate a line of railroad through the parishes of Orleans and Plaquemines in this state; said railroad to begin in or near the city of New Orleans on the right descending bank on the Mississippi river, and to be built down on a line at, near, or contiguous to the Mississippi river, following such cutoffs as may be deemed necessary as far as the 'Jump' on said river or beyond it as may hereafter be determined."

That petitioner had constructed and had been operating for many years said road from the city of New Orleans, at a point in Algiers, through the parishes of Orleans, Jefferson, and Plaquemines as far down as Buras, in the parish of Plaquemines, a distance of about 60 miles, and had supplied said railroad with locomotives, cars, stations, and all the paraphernalia of a railroad carrying passengers and freight. That the New Orleans Southern Railway Company was a corporation organized under the laws of the state of Louisiana, domiciled in the city of New Orleans, as appeared by a copy of its charter annexed and made part of its petition.

That, as appeared by its said charter, the main object and purpose of said corporation was:

"To locate, construct, maintain, and operate a standard guage railroad, with the necessary side tracks, switches, turn-outs, turntables, poles, and wires, and to erect, maintain, and operate the same and to use all and any appliances and contrivances necessary and suitable to operate the same; the route to start from a suitable point on the south side of the Mississippi river, in the parish of Jefferson, opposite the city of New Orleans, thence through the parish of Jefferson and the parish of Plaquemines to a point at or near Southwest. Grand South or South East Pass, with a branch from such line to Grand Isle," etc.

That, as appeared by a mere comparison of the routes of the main lines of the two railroads provided for by the charters of the two companies, the railroads of the two companies were parallel and competing lines of railroad. That it further appeared by the charters of the said two railroad companies that no power was therein contained either to lease their own respective lines or to lease the lines of other railroads, and that, even if such power had been inserted in such charters, such provisions would have been contrary to the statutes of the state of Louisiana and void. That the only provisions in the laws of this state which permit the lease of one railroad by another were found in Act No. 74, p. 101, of 1902, which provided:

"That any railroad company in this state existing under the general or special laws of this or any other state or territory or of the United States may sell or lease its railroad property and franchises to any other railroad company duly organized and existing under the laws of this or any other state or territory, whenever the line or lines of said contracting com-.

panies shall or may form in the operation thereof by bridge, ferry, or otherwise, connecting or continuous line or lines of railroad, provided that the said railroads of the said companies thus contracting shall not be parallel and competing lines."

That the railroad of petitioner and the railroad contemplated by the charter of the New Orleans Southern Railway Company, which it was obligated under its charter "to locate, construct, maintain and operate," did not and could not form in the operation thereof by bridge, ferry, or otherwise connecting or continuous lines of railroad. On the contrary, the said lines of railroad were distinctly parallel and competing lines of road. That on the 24th day of March, 1908, by act before Charles T. Soniat, notary public, a duly certified copy of which act was annexed and made part of its petition, a lease of all the railroad property and franchises of every kind and nature of petitioner was made for 75 years to the said New Orleans Southern Railway Company. That the said lease was absolutely null and void and of no effect or validity for the reasons above set forth, and was against the law and public policy of the state of Louisiana, and that petitioner had no power to make such lease to the defendant, and the defendant had no power to lease the railroad and franchises of petitioner. That on the said 24th day of March, 1908, the said New Orleans Southern Railway Company took possession of all the railroad property of petitioner, including its roadbed, locomotives, cars, stations, water tanks, side tracks, platforms, and all of its said tools, apparatus, and appurtenances, and all of its open accounts, books, and papers, and since that time had held possession of said property and had received and collected all of the tolls, income, and profits of said railroad and held possession of the same and refused to deliver the same to petitioner, although it well knew that the lease aforesaid was null and void.

That the said New Orleans Southern Railway Company had never had in its treasury a single dollar except the money derived from the income of petitioner's property. That of the $10,000 of stock subscribed for in its charter to make it a going concern not a cent had ever been called or paid in, and no subscriptions to its capital stock other than that set forth in its charter had ever been made. That said defendant company in the conduct of its affairs and business and in the operation of petitioner's railroad had used only the rents and revenues of petitioner's railroad aforesaid, and that said rents and revenues were and had been deposited to its credit in the New Orleans National Bank, a corporation of the United States, domiciled in the city of New Orleans.

That it had a bonded debt of $410,000 of first mortgage bonds, bearing 5 per cent. per annum interest, on which semiannual interest of 2½ per cent. will be due and payable on January 1, 1909, and of $102,500 second mortgage bonds, bearing 5 per cent. per annum interest, on which 2½ per cent. will be due and payable on January 1, 1909. That the payment of said bonded debt and of the interest thereon was assumed by the defendant company in the lease aforesaid. That said company had no means and no funds to pay said interest when it shall fall due, except the rents and revenues derived and to be derived from petitioner's property.

Petitioner charges: That it is the object, purpose, and scheme of said defendant company and its officers and particularly of its president, Arthur Kennedy, who completely controls, dominates, and manages the affairs of said company, to permit a default of said mortgages, and not to apply to the payment of the approaching January interest the income and revenue of petitioner's railroad, but to divert the earnings of said railroad, past and future, to his own purposes and to the purposes of the defendant com-

pany. That a default on the interest on said mortgages would cause petitioner an irreparable injury, because by the terms of said mortgages all the principal thereof would immediately become due and the whole of said debt would be precipitated on petitioner at once, without means to pay it, which would result in the foreclosure of said mortgages and the divestiture of petitioner's title to said property. That petitioner being out of the possession of its property and its revenues, and having no other means on which to raise money to pay said interest, was helpless to prevent this calamity, except through the intervention of the court.

That during the pendency of this suit the said defendant will, unless restrained by the injunction of this court, withdraw the funds arising from the income of petitioner's property from the New Orleans National Bank where they were then deposited, and will apply them to its own purposes, so that said funds will be irrevocably lost to petitioner, and that it will receive and dissipate for its own purposes the current daily receipts from the operation of petitioner's property, and that, as it was necessary to keep said railroad a going concern in the interest of the public, petitioner had no objection to the application of such funds and such daily receipts from petitioner's property to the daily operating expenses of such railroad, meaning thereby the wages of employés, and the purchase of fuel and current necessary supplies, but not to salaries of the officers of said company, or to bills heretofore incurred by said defendant railroad company, nor has petitioner any objections to the use of said funds to pay the January, 1909, interest on its bonds.

That a writ of sequestration of the property of petitioner in the unlawful possession and control of the defendant would not give petitioner proper or adequate relief, for the reasons that said property was located in the parishes of Orleans, Jefferson, and Plaquemines, and this would require the issuance of writs to the sheriffs of the three parishes to seize said property as it was in their respective parishes. That it would be impossible to operate the said road as a going concern in the interest and for the convenience of the public under the administration of the sheriffs of three parishes, and that the only and proper remedy for the situation was the appointment of a receiver by this honorable court to take possession of, hold, administer, and operate said railroad of petitioner during the pendency of this suit.

The premises conceded, petitioner prayed: That the New Orleans, Southern Railway Company, through its proper officer, be cited, and that, after due proceedings had, there be judgment in petitioner's favor declaring the lease of petitioner's railroad and its franchises and property made before Chas. T. Soniat, notary public, on March 24, 1908, to be absolutely null and void ab initio, and declaring petitioner entitled to have possession of said property, and to be entitled to have and recover of the defendant all the rents and revenues of said property from the date of said lease, March 24, 1908, according to an accounting to be had on the trial of this cause, and to be the owner of all funds arising from the rents and revenues of said property now in the New Orleans National Bank or elsewhere deposited.

That on its giving bond in a sum to be fixed by the court a writ of injunction issue herein prohibiting, enjoining, and restraining the defendant, its officers, agents, and employés from using any of the income and profits or daily receipts arising from the operation of the railroad property of the New Orleans, Ft. Jackson & Grand Isle Railroad Company, or any of the funds now deposited in the New Orleans National Bank arising from the income of said railroad or any of the funds that may hereafter be deposited in said bank,

arising from said income for any other purpose, during the pendency of this cause, except for the payment of the January interest upon the bonds of the plaintiff, and the payment of the daily current expenses of the operation of said railroad, meaning thereby the current wages of employés and for the purchase of fuel for current use and necessary current supplies, and that on final hearing this injunction should be made perpetual.

That an order may be herein issued directing the defendant, the New Orleans Southern Railway Company, to show cause why a receiver should not be appointed in this cause to take possession of and hold the railroad of the plaintiff and all its appurtenances and all the income and profits thereof past and future, and to manage and operate the same during the pendency of this suit, and, on said hearing, that such receiver be appointed and given such power and authority as are usually given to receivers of railroads and as are appropriate in this case.

In the event that the court should hold that writs of sequestration and not the appointment of a receiver was the proper remedy, petitioner prayed that on its giving bond in a sum to be fixed by the court the court would order a judicial sequestration of said railroad and its appurtenances, and, accordingly, that a writ of sequestration be issued to the sheriff of the parishes of Orleans, Jefferson, and Plaquemines, directing them and each of them to sequester and hold in their possession until the further order of the court, all the property in their respective parishes appertaining to the railroad of the New Orleans, Ft. Jackson & Grand Isle Railroad Company, and all the money and income thereof, and particularly the funds deposited in the New Orleans National Bank, to the credit of the New Orleans Southern Railway Company, and any other funds of said defendant arising from the income and profits of the railroad of petitioner.

Petitioner prayed that it be adjudged and decreed that the said receiver was a judicial sequestrator appointed by this court, and that all the costs and expenses of said receivership, as well as all the costs of this cause, might be adjudged against the defendant.

The court ordered an injunction to issue, and that defendant show cause as prayed for.

On December 18, 1909, the defendant company excepted:

First. That said petition discloses no right or cause of action against this appearer.

Second. That there is a nonjoinder of parties herein. The bondholders of the New Orleans, Ft. Jackson & Grand Isle Railroad Company, being parties to the lease, are necessary parties to this suit.

Third. That plaintiff, averring that it entered into an illegal contract with defendant, cannot be aided by the court to enforce it, or set it aside, it appearing from the petition that both parties are in equal fault.

Fourth. That plaintiff, by its own showing having contracted with defendant as a corporation, is estopped from denying its corporate existence and power to contract as such.

Fifth. That defendant specially pleads that plaintiff has failed and neglected to offer, restore, and deliver up the bonds deposited at its request to guarantee the performance of all the obligations contained in said lease herein complained of.

Sixth. That proper authority was not given by a quorum of the board of directors to file this suit.

Wherefore defendant prayed that these exceptions be sustained, that the writ of injunction herein issued be dissolved, and plaintiff's suit dismissed, at his costs.

In the event the said exceptions be overruled, and not otherwise, then for answer to plaintiff's petition defendant denies each

and every allegation in said petition contained.

Defendant specially denies: That the contract of lease entered into by plaintiff with defendant was in violation of law, ultra vires, or illegal in any respect whatever. That the plaintiff, the New Orleans, Ft. Jackson & Grand Isle Railroad, was by its charter (article 1) specially authorized "to purchase, hold, own, lease, sell and mortgage or pledge, real estate or personal property." By article 9 "this corporation shall have power to consolidate with any other company organized under the laws of this state," etc.

That by article 1 of the charter of the New Orleans Southern Railroad Company the said company was authorized "to hold, lease, purchase, receive, mortgage, pledge and convey property, real, personal, and mixed, of any kind."

That by section 3 of Act No. 74, approved July 2, 1902, it is provided:

"That any railway company existing under the laws of this state * * * may acquire by lease from any other railway corporation, existing and organized under the laws of this state, * * * the whole or any part of which is in the state, with all the property, privileges, appurtenances, rights and franchises, stocks and bonds of said railway company or companies, * * * whenever the railroad lines of said contracting companies, shall or may fork in the operation thereof connecting the continuous line or lines * * * provided that the lines of said companies thus contracting shall not be parallel and competing."

That at the time of the execution of said lease of the railroad then and previously owned and operated by the plaintiff company the defendant was not then or before a parallel or competing line of road. That, inasmuch as the New Orleans Southern Railway Company does not own any line of road nor operate any competing line, the said defendant did not come within the proviso of section 3 of said act No. 74, approved July 2, 1902.

That the said New Orleans Southern Railway Company authorized by its charter to build a certain line of road had the right and power to lease or purchase another railroad already built on that line, instead of constructing the same itself, and there was no prohibition contained in the Constitution or laws of this state preventing it from so doing.

That the object of the prohibition contained in said proviso was clearly to prevent one independent corporation from acquiring the possession of a road of another company which was operating a competing line. It was to prevent the buying up by one railroad corporation of a competing line and the establishment thereby of a monopoly, but it did not apply or embrace a corporation authorized to build and construct a line of railroad, which had not at the time of the lease done so, or prevent it from buying another railroad already built on or over the contemplated route.

That said lease was made and entered into with the consent of the stockholders of plaintiff company, and also of defendant, after complying with all the requirements of their respective charters. That Arthur Kennedy, president of defendant company, on the demand of plaintiff, through its board of directors, deposited first mortgage bonds of Chicago, Northern Indiana & South Bend Railway Company with plaintiff to insure and guarantee the performance of all the obligations contained in said lease for the space and term of two years.

That said plaintiff could not retain such guaranty without first tendering back the 35 first mortgage bonds of ——— put up and deposited to guarantee the performance of all obligations contained in said lease.

That defendant had expended large amounts in operating said railroad so leased by it, as aforesaid, in the purchase of rails, cross-ties, new engines, and other equipments; a portion of the purchase price thereof being still due and payable. That defendant had improved

the services and facilities for transportation, both of freight and passengers, over said road. And this defendant specially denied that its president, officers, and others desired or intended to permit a default on the mortgage bonds, and not to apply to the payment of the approaching January interest the income and revenue of its property, but, on the contrary, the president of plaintiff's company, in direct violation of the desires and wishes of its minority stockholders, without their consent, had attempted to destroy the credit, wreck and ruin the plaintiff company, and to cause a foreclosure of the first and second mortgages, amounting to $512,500 without any necessity or reason therefor.

That the refunding of the past-due coupons in the bonds and the postponement of the payment thereof was a part of the agreement contained in the lease by the plaintiff to this defendant of its franchises, property, etc., and the bondholders assented thereto because of the stipulations contained in said lease; and, if the said lease was wrongfully canceled and annulled at the instance of the plaintiff's president, that the original coupons which were funded into said bonds amounting to $102,000 would be reinstated as an immediate obligation of said plaintiff company, and the bondholders authorized to foreclose at once on the whole of said indebtedness under the terms and conditions of said mortgages and the stipulations in said contract of lease.

That said lease could not be valid and binding in part and invalid and illegal in part. That if the obligations of said plaintiff company were ultra vires, illegal, or void, which was specially denied and said averment repudiated by defendant, then the agreement to merge said past-due coupons into bonds and to postpone the payment thereof would thus render the whole of said lease nugatory, which would entail great injury and damage upon the stockholders of said plaintiff company. That, besides the maturing interest on said bonds, the plaintiff owed a large amount of taxes, $7,000, the payment of which must be provided for over and above all other obligations without delay.

That the writ of injunction herein issued was illegal and wrongful, and should be dissolved with 20 per cent. attorney's fees and say the sum of $2,500 as damages. In view of the premises, defendant prayed that plaintiff's demand be rejected and dismissed, with costs, that the writ of injunction herein issued be dissolved, and the plaintiff and surety on his injunction bond be condemned in solido to pay this defendant all costs, and for general and equitable relief.

On December 18, 1908, Frank T. Howard filed with leave of court a petition of intervention in the case, in which he alleged: That he was the owner of $500,000 of the $512,500 outstanding mortgage bonds referred to in plaintiff's petition as the bonded debt of plaintiff, and that he is the owner of 1,325 shares of the par value of $50 each of the capital stock of the plaintiff company, the total outstanding stock being 4,873.

That the plaintiff company was organized on the 15th day of December, 1888, by act passed before Henry Edward Gilmore, a notary public, in and for the parish of Plaquemines, state of Louisiana, and that the said company never at any time paid any dividends on the stock, the income from its property not being sufficient to pay the operating expenses, keeping the property in repair, and paying the interest on the mortgage debt, and as matter of fact on March 24, 1908, the date of the lease of property to the New Orleans Southern Railway Company, there were $102,500 coupons annexed to mortgage bonds due and unpaid, $100,000 of which were held by petitioner. That on November 26, 1907, Charles D. Haines purchased 2,660 shares of the New Orleans, Ft. Jackson & Grand Isle Railroad Company for the price and sum of $8,000, paying $2,000 cash, and the balance

on December 11, 1907; the said $6,000 balance being raised as petitioner has been informed by a loan from a bank in the city of New Orleans on the pledge of the stock purchased.

That on March 24, 1908, the plaintiff company by act passed before Charles T. Soniat, notary public in and for the parish of Orleans, leased to the defendant company for a term of 75 years from March 24, 1908, all of its property. Among other things which the lessee, the defendant herein obligated itself to do as a consideration for said lease were the following, viz.:

First. To pay the debts due by the lessor, plaintiff herein, and particularly the mortgage indebtedness amounting at the time to $410,000 and $102,500, past-due coupons. Second. To pay the principal and interest on the bonds at their respective maturities, and also to pay the following dividends on the stock, viz.: First year 3 per cent.; second year 4 per cent.; third year 5 per cent.; and fourth year 6 per cent.; and a like per cent. each succeeding year for the entire term of the lease. The payments of dividends on the stock were to be made semiannually, the first payment 1½ per cent. on January 1, 1909, and Arthur Kennedy deposited $35,000 bonds of the Chicago, South Bend & Northern Indiana Railroad Company first mortgage bonds as a guarantee that the lessee, defendant therein, would carry out the terms and conditions of the lease. In consideration of the benefits to accrue to petitioner from said lease as a stockholder and holder of the mortgage bonds and past-due coupons, as aforesaid, petitioner agreed to surrender the past-due coupons held by it, and take in payment mortgage bonds maturing in 1921, and petitioner now avers, if the lease between plaintiff and defendant is null and void, then there should be judgment in his favor restoring the situation as it existed before the said lease was entered into by declaring the $102,500 past-due coupons which were canceled by the execution and delivery of the $102,500 bonds secured by act of mortgage passed before Charles T. Soniat, notary public, on May 1, 1908, to be in full force and effect and on the mortgage securing the payment being reinstated on the public records, the bonds executed on May 1, 1908, as well as the mortgage given to secure the payment thereof given be decreed to be null and void.

That the lease entered into by and between the plaintiff and defendant was advantageous to the stockholders of the plaintiff company as it insured to them a payment of dividends on their stock which they had not received in the past, and, if the lease was declared to be null and void, then the $35,000 first-mortgage bonds pledged as a guarantee of the lease would necessarily have to be returned to Arthur Kennedy to the great detriment of petitioner, a stockholder and bondholder as aforesaid.

That the said lease was not null and void, for the reason that the defendant at the time it leased had no road constructed, and therefore, in leasing the plaintiff's property, it did not lease a competing road, and under the law of the state of Louisiana, as well as the charters of both plaintiff and defendant, the said lease was valid and binding, and the court should so hold.

That if the lease be null and void, which was denied, there was no necessity for the appointment of a receiver herein, as all parties were amply protected by the injunction which prohibited and enjoined plaintiff, its officers, agents, and employés from using any of its income and profits arising from the operation of the railroad property of plaintiff or any of the funds now deposited in the New Orleans National Bank arising from the income of said railroad company, or any of the funds that may hereafter be deposited in said bank arising from said income for any other purpose during the pendency of this suit except for the payment of the January interest on the bonds of plaintiff, and

the payment of the daily current expenses of the operation of said railroad property meaning thereby the current wages of employés, and for the purchase of fuel for current use, and necessary current supplies. Said injunction, however, should be modified so as to permit the payment of the taxes and the payment of $200 per month to F. Muller, bookkeeper, and $250 per month to J. S. Landry, superintendent.

That the appointment of a receiver herein would very seriously impair the value of the mortgage bonds held by petitioner, as the income from the road was barely sufficient to pay and maintain the property and pay the interest on the mortgage debt, and to burden the property with the costs of a receivership would be to very greatly impair the value of his security without there being any necessity therefor. The road was being operated in an economical manner, and the court should not subject the property to the enormous costs of a receivership to gratify the desire of those who had very little if any, financial interest in the property; the property not being worth to-day more than the mortgage indebtedness.

In view of the premises, he prayed: That upon the trial there be judgment maintaining the validity of the lease entered into by and between plaintiff and defendant on March 24, 1907, as per act passed before Charles T. Soniat, notary public, and maintaining the injunction sued out after it had been notified so as to permit the payment of taxes, and the salaries of F. Muller, bookkeeper, and J. S. Landry, superintendent, out of the revenues of the property. In the event, however, it should be held that the lease was null and void, then that there be judgment decreeing that the $102,500 past-due coupons and the mortgage given to secure the payment thereof canceled by delivery of $102,500 bonds secured by act of mortgage passed before Charles T. Soniat,

notary public, May 1, 1908, be decreed to be in full force and effect, and that, upon the mortgage given to secure the past-due coupons being reinstated on the public record, the $102,500 mortgage bonds, secured by act passed before Charles T. Soniat, notary public, May 1, 1908, given in payment for said past-due coupons, be decreed to be null and void. That the application of the plaintiff for the appointment of a receiver herein be decreed denied and for costs and for general relief. The plaintiff answered the intervention of Frank T. Howard pleading a general denial. In particular it denied that the intervener as holder of only a part of the bonds aforesaid had the right to upset and destroy the mortgage of the plaintiff. It specially denied that the funding of the bonds of the plaintiff was any condition or part of the lease in this case. It prayed that the intervention be dismissed.

The defendant answered the same intervention. It pleaded a general denial, and prayed that the intervention be dismissed.

On January 18, 1909, on motion of counsel for intervener the intervention was discontinued.

On January 26, 1909, the district court rendered judgment in favor of the defendant and against plaintiff discharging the rule for a receiver and dissolving the injunction which had issued. On the main demand it rejected plaintiff's demand, and dismissed its suit, and on motion of intervener's counsel discontinued the intervention. It dismissed defendant's reconventional demand as of nonsuit reserving defendant's right to sue for damages. Plaintiff has appealed.

We understand that the only question presently urged by the appellant and submitted for decision to this court is whether the lease entered into between the two corporations was invalid or not under the provisions of Act No. 74, of 1902, and incidently whether the plaintiff occupies such a posi-

tion as entitled it to have recourse to an action for its annulment. The charge made against the defendant company or its president of a purpose to permit or bring about a default in the interest coupons due January 1, 1909, has been shown to have had no basis to rest upon. It has been shown that the appointment of a receiver would result in good to no one, but, on the contrary, in injury to all concerned. We do not think that the provisions of Act No. 74 find application under the circumstances of this case. Under the evidence the railroads of the two companies are not "parallel and competing lines." It appears very clearly, we think, that under no circumstances could or would two roads have been constructed or operated simultaneously. The business of the territory along the west side of the Mississippi river below New Orleans is utterly insufficient to support two roads. The operations of plaintiff company acting singly and alone have been carried on ever since its organization with great difficulty. So much so that no second company would attempt for a moment to enter the field as a rival and as a competing road. The lease in question was not expected or intended to restrict railroad business to one line in a case where but for the lease two railroads would have gone into active operation. No one reading the transcript in this case could possibly reach the conclusion that the annulment of the lease would carry with it as a result the construction by defendant of a "parallel and competing line of railroad" on the west side of the Mississippi river.

Should the lease be annulled, there would remain the line of the plaintiff company. There would be no other. The mischief to the public sought to be avoided by the act of 1902 does not arise in this case. Should a condition of things arise in the future affecting the public good it can be effectually met at that time by the action of the state.

We are anything but favorably impressed by the course of the president of the plaintiff corporation in this matter. This suit is manifestly brought in furtherance of his individual benefit, although the public good is brought to the front in aid of the same. There are equitable considerations arising out of the present situation which we are not disposed to deal with as matters stand. Important rights of third parties not before the court are involved which have to be adjusted. We do not feel called on to take action in this matter under present conditions, even should plaintiff's position that its right of action is not barred by the course which it has taken be conceded, as to which we need express no opinion. We think that justice, good faith, and equity require that the parties should be left where they have placed themselves.

The judgment appealed from is correct, and it is hereby affirmed.